On the court's docket is 517-0071, Feezel v. Ryan Feezel. Mr. Grosham, welcome. Good morning. I'm Don Grosham. I represent the appellant, Ryan Feezel. This is a criminal case involving a statute of mandatory junior, an offshoot of double jeopardy. The defendant here, as I'm sure you know, was charged originally with a traffic offense, which was improper lane usage, and he went in and pleaded guilty on his own when he was pro se, right after he got the ticket. The child judge set aside that plea, refunded his $100 fine, and reset the case on a must-appear docket shortly thereafter, a couple weeks or so thereafter. So the defendant came back in, and at this time, unlike the first appearance, a prosecutor was there, in person. Again, Feezel pleads guilty, is judged guilty, fine, pays his fine, so the sentence, the case is over. I file a motion to dismiss the subsequent prosecution for aggravated driving under the influence of sleeve-violated mandatory junior and double jeopardy. The state opposed this. We had a hearing. The child judge denied the motion to dismiss. In doing this, the court interpreted and the prosecutor almost exclusively argued the case of Peabody Jackson, which is a homeless pre-court case I'm sure you're aware of. That case basically says that mandatory junior does not apply where a traffic ticket, even from traffic citation and complaint, is used as a charging document because it's drawn by a policeman, it's not designed to charge felony matters. That is reserved to a prosecutor. And so because the prosecutor is entitled to input, we're not going to allow this statute to apply where a prosecutor doesn't have input. That is in the language quoted by the state in the brief on page 7 of the brief. The language of the compulsory junior statute requires either a defense's normal prosecutor, and within the jurisdiction of the same court, which is over here, it's not contested, and there was no sentence, which there wasn't here, and then based on the same act, which they didn't contest it either, the act of driving. So the question then is, did the state know, which that's what they did, and can you distinguish Jackson because in Jackson it further said the reason that they're holding that the mandatory junior statute doesn't apply to uniform citations is because the statute contemplates the active involvement of the prosecutor. Here, I respectfully assert to you, we did have the active involvement of the prosecutor. When Faisal came in, pro se, there was a prosecutor there. That prosecutor was aware of several things. She knew she had a fatal accident. She had a copy of a crash report that was prepared by the officer. The crash report had a stamp. This isn't a record, of course. It's stamped fatal. They're on all four pages of it. She knew she had a fatal accident, and when armed with the crash report, she also knew one other thing, or should have known, that it involved substance abuse. The record on appeal has been supplemented with a copy of the crash reports, documents that relate to it, and how you interpret the codes. The state, in its brief, argued extensively that they had no idea what the codes in the traffic crash report meant. They were totally confused. They were indecipherable, was the state's argument. The crash report, of course, was in the hands of the state's attorney, and if you look at the report, on the right-hand side, there's a bunch of boxes, and then there's a box that says BAC. BAC is the universal, in our lingo, lawyer talk for blood alcohol concentration, and everybody that deals with drug and influence cases and alcohol knows this. Much less a prosecutor would know this. In the box that says BAC, on that crash report, it had U1 and U2. That's vehicle 1, vehicle 2, or unit 1, unit 2. One for each one, and it had a number put in there, 97. 97 means that there was alcohol testing, substance abuse testing, and the result isn't known yet. And that's what their crash report said. And do you agree that those results were not known to the state's attorney until September 2, 2016? They had the crash report at the time of the point. But it did not have any test results, did it? It did not have any test results at that time. They didn't have a test result. There's an anomalous case I cite to you of test results that have to do with tools and fingerprints. You know, sometimes they send in and they don't have reports back yet, but they're on a notice. They know there's been a test. There's going to be some kind of report generated, some kind of a finding. A proven prosecutor, when confronted with this situation, here comes the defendant. He wants to plead guilty. I know as a prosecutor it's a fatal accident, and I know that the substance abuse testing and alcohol testing, I don't have to let him take a plea then. I could nolly the case and give myself more time. I could sever it, ask the court to sever it. I could let him plead and not sentence him because sentence is the final conviction of the case. The prosecutor knows that they have these options. An experienced prosecutor certainly would know. Nobody asked to do any of these things at the time this guy pleads. They went ahead and they, in my judgment, that prosecutor opted to take the case on the strength of the charging document that was there, which was a traffic citation. She adopted that document as her own charging document because she proceeded. She made a decision to proceed to imposition of a plea, a conviction, and a sentence. When she does that, that triggers mandatory joint. Now, if you look at the Jackson case, Jackson says, we're not going to let someone walk in and it's kind of a subterfuge, plea guilty to a minor offense that's charged by a traffic ticket with the purpose of trying to evade prosecution for something else. That isn't what happened here anyway. But the point really under Jackson, the distinguishing fact is that prosecutor was there. There was alcohol or substance abuse. They represented this falsely to the trial court, and they represented it falsely here. Mr. Groshon, why do you think, why did you say in your argument just now that your client wasn't attempting to, I'm sorry, your client didn't plead guilty in an attempt to avoid prosecution for a more serious offense, as in Jackson? Well, I don't think that he did. He's a pro se teenager. All he did is he came in two times and pleaded guilty and paid the fine the court imposed. So he was pro se on August 22nd? Yes, he was. Came in with his dad. And so the only people in the courtroom that understand what we're talking about were a judge and a prosecutor. Not that kid. The state also had another document called warning to motorists. You know, when you have an alcohol-related or suspected alcohol-related case, a traffic crash, and the cop issues a ticket, he issues a warning to motorists. Warning to motorists come to these DUI cases frequently because what it tells you is you've got to take tests, you've got to submit to tests or there's going to be a penalty for not taking an alcohol-related test. And you either blow on the breathalyzer or we can suspend your license and whatnot. The state had the warning to motorists at the time of August 22nd? The state asserts that they didn't have the warning to motorists. I find that hard to believe, but that thing occurred with all the time of the hearing. But in any event, they had a crash report which tells them the same thing. Why does it tell them the same thing? Because in the boxes on that box, I can't remember the number going down the side, that crash report said there's been a test, the result isn't known yet. So the prosecutor... Didn't it say VAC 97? Yes, it did. 97 means there's been a test. It's both, both the decedent and the defendant. And the results aren't back yet. It also says... How does that VAC 97 tell you that from the report, what you just told us? How do they know what it means? What it means, yes. Well, first of all, they could call a private officer up and ask him what it means. It's a crash report. It defies human experience to believe that police officers routinely draw these crash reports, prosecutors routinely try traffic tickets, cases relating to traffic accidents, and a prosecutor doesn't get a clue what these say? You know, we file our briefs online, you file your opinions online, all this stuff's online anymore. These prosecutors, there are all kinds of Illinois government websites. I found it. Why should a prosecutor be able to stick his head in the sand and say, gee, I need a Rosetta Stone to figure out what this secret code... They want you to believe that it's an indecipherable number. They could have made a phone call to the authority. He told them he wrote the report. They could have looked it up. You'll have additional time, Mr. Rorschach. Thank you. Now I understand you've asked to sit a little closer because the court has indicated that you may sit closer so that you can hear so you can adjust your chair if you'd like. You can adjust your chair if you'd like. Go ahead. Thank you very much. If you'll give him a moment. I'm sorry. No, you're fine. Just motion if you want me to try to be louder. Motion. Okay. Mr. Groshon, if you need to move again, just feel free to do so. Thank you. Okay. May it please the court, counsel, Chelsea Caston on behalf of the state. Your honors, traffic offenses that are charged by the use of a uniform citation or complaint form completed by a police officer rather than a prosecutor are not subject to compulsory jointer with charges brought under an indictment. That is the law. That is the accepted law. Defendant concedes in his brief that there is no criminal case law that supports the notion that the codes in the Illinois traffic crash report is sufficient notice to the state of substance abuse testing and pending results. That is because no reasonable court would hold the state to such an unrealistic standard. Counsel, what about this argument that, you know, an assistant state's attorney showed up at the, I guess, the second hearing or the plea deal. And so, you know, the state was aware, even though they may not have drafted the citation. Your honor, we don't actually have the benefit of knowing exactly what happened in the courtroom that day because it's not in the record. It wasn't recorded. But it was a minor traffic offense, meaning that the state was there for traffic court. It's rudimentary and the ASA might as well just set up an office for the day in the courtroom. They're going to be present. That does not impute knowledge onto them about what was contained in a report that is set in the record that they did not have. Additionally, as Justice Moore noted, it says BAC 97. There's a reason why the Illinois Supreme Court has said that the legislature did not intend for a traffic citation to mean compulsory joiner prevents an indictment from later being filed. It's because BAC 97 is not sufficient notice to tell them what's going on. They're two completely different animals handled by two completely different offices. And the state was not responsible before they had some kind of knowledge and information before them. In this case, the report stating that there were drugs in the defendant's system to bring charges against him. Until they had that report, they really had no sufficient basis to charge him with the act of driving under the influence. The Illinois Supreme Court held that we do not believe that the legislature intended that a driver could plead guilty to a traffic offense on a traffic ticket issued by a police officer and thereby avoid prosecution of a serious offense brought by the state's attorney. The original charges were traffic offenses. It's a traffic ticket. He went in, he paid a $120 fine on his own, and he walked out. That was handled by himself and with a police officer. The state's attorney didn't become involved until they received the report from the lab stating that there was presence of methamphetamines and other drugs in his urine. That's when the state became involved. There is absolutely no indication in the record that the state knew other than claiming they were in the courtroom that they knew BAC 97 means that, hey, we sent it for additional testing. They didn't even know what the test was going to say. There is a case law to support the defendant's position, but there is a case law to support the state's position because to hold what the defendant's arguing is holding the state to an unrealistic position. It's holding them to a level of attentiveness that they're not required to be doing at that point in the case. There's been a lot of argument about the police reports and the fatality and the meaning of all of these, and I don't understand how they're relevant even here. I mean, under the Jackson case, if I understand your argument, it's kind of like cut and dry. I think what you're arguing is if it's on a uniform citation complaint, no matter who's there, you can't have compulsory joiner statute, period. Is that what you're arguing Jackson says? Yes, Your Honor. Absolutely. Cut and dry. That simple. It is that simple. And then just following up on the defendant's argument that, well, this is different because the report says this BAC 97 is just addressing another part of that argument of, no, this isn't different. This is the exact same situation. These are standard forms that are filled out by the police when they're filling out a traffic citation. It's all very standard. In Illinois, is it required that a prosecutor review a traffic citation? Not to my knowledge, Your Honor. I honestly don't know the answer to that specifically. Well, as Mr. Gorshaw indicated, there are counties where literally the state's attorneys set up shop on certain days and they just go through a hundred traffic citations and make deals and move on. But I don't think there's a requirement that they actually review and sign off on uniform citations. I don't believe so, Your Honor. It is in Missouri. That's why I ask. Missouri, I think, is different. Missouri, they have to sign off. Well, they have to sign off. The state has to sign off on a ticket. But I don't think in Illinois. I think the way the statutory creation is, the state doesn't have to sign off. I haven't read it to require the state to sign off, Your Honor. No, I think you're right. I think that's why someone can come in and plead guilty to a traffic citation in front of a court because we allow police officers to charge those offenses, those petty offenses. Yes, Your Honor. And then the indictment happens later and it's a different office, a different animal, a different thing entirely. But either the state can bring an indictment or an information. Yes, Your Honor. The police can't do that and they shouldn't. So there's a reason why it's separated and there's a reason why the compulsory joinder statute doesn't apply here, and it's because the legislature and Illinois Supreme Court have both said that they don't, and it's for a reason because this young man doesn't get off with a fine after he killed someone when he has drugs in his system. So we would just ask that you affirm the ruling of the lower court, let this case proceed, unless you have any further questions. Thank you. Okay. Thank you. Mr. Gershon, what do you say? The most important thing I think here is there's even a reason for the Jackson decision. If you read Jackson, it's clear what it says. We've already talked about that. But the reason the Supreme Court said what it said was they want prosecutors to have input. They're not going to allow proceedings with minor readers to occur that affect the prosecutor who was not there. And that's what Jackson says. Well, Jackson actually looks at the statutory provisions and the reasons that they're passed, and it discusses the uniform citation and complaint forms, right? And it says that those are intended to be used by a police officer. I believe it, and I think they are, too. And that's why a police officer can issue them and defendants can plead guilty. Yeah, but here, what happens is the prosecutor adopts it as their own document. But the distinction is there is no distinction in the statute. The statute is police officers can issue these. You can plead guilty. It doesn't say, and Jackson says, so if they're issued by a police officer, the joinder statute doesn't apply. Now, your position, it wouldn't make any difference if the prosecutor was there or not. Right. Like the first instance. I don't disagree at all. The first time when FISA went in and pleaded guilty, no prosecutor was there. And if that was all we had, we would not be here today because he would be guilty of that and make it proceed. The difference is that prosecutor was sitting right there and participated in the result and the conviction, and that means the reasons behind the Jackson decision is all even taken care of. We already had the prosecutorial participation. But it was still on a uniform citation complaint. And Jackson specifically says, and tell me how we get around this, an accused cannot be charged with a felony by the use of a uniform citation form. The traffic ticket used by a police officer constitutes the complaint to which the defendant may plead. That's right. And that's why here it's an option to proceed on the misdemeanor and not charge a felony. It's almost a way for them to proceed that way because they didn't have to. They could have asked to acknowledge it. They could have asked to take a plea only if not sentenced. You look at the Thomas case I cited to you. It contains an exception to Jackson where the state came by later and added additional DUI counts. It's an important distinction because it shows that there are circumstances like this one I submit to you where Jackson should be read to say that while the normal rule is going to be you can't do this, there are certain circumstances like in Thomas and like in Fiesel where because the state participated, it is permissible. Thank you. Thank you. No problem. Okay, thank you, counsel, for your arguments. This is a tough issue. The matter will be taken under advisement and we'll issue an order in due course. Thank you.